Joseph ELLIS, Mae Campbell, Delbra Roberts, Savannah Daniels and Pearl Holmes, Plaintiffs-Appellants,

v.

The UNITED STATES POSTAL SERVICE and Postmaster Frank Goldie, Individually and in his official capacity, and Gwendolyn White, Defendants-Appellees.

No. 85–1813.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1985.

Decided Feb. 27, 1986.

Armand L. Andry, Oak Park, Ill., for plaintiffs-appellants.

Elizabeth Stein, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Lori Dym, Law Dept., Office of Labor Law, U.S. Postal Service, Chicago, Ill., for defendants-appellees.

Before COFFEY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellants, five employees of the United States Postal Service, filed this action in the United States District Court for the Northern District of Illinois, alleging claims under 42 U.S.C. § 1981; 42 U.S.C. § 1985; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA); the National Labor Relations Act, 29 U.S.C. § 151 *et seq.;* the Postal Reorganization Act, 39 U.S.C. § 201 *et seq.;* and the due process clause of the fifth amendment.[1] The gravamen of the appellants' complaint is that defendant Gwendolyn White, another Postal Service employee, was improperly given preference over the appellants with respect to job promotion and shift assignment. The district court dismissed the action. We affirm.

I

Appellants Mae Campbell, Savannah Daniels, Joseph Ellis, and Pearl Holmes applied for the position of Head Nurse at the main post office in Chicago, Illinois; Gwendolyn White had also filed an application for the same position. All five applicants were interviewed by an advisory panel. After reviewing the applications and considering the panel's recommendation, Frank Goldie, Postmaster of the Chicago Office, selected Ms. White for the job.

The appellants' complaint is based on this hiring decision. In Count I, appellants Ellis, Campbell, Daniels, and Holmes allege that White's promotion constituted "political discrimination." They contend that Ms. White was selected because of her membership in the Phoenix Association, an "upward mobility social organization," Appellees' Br. at 4, of which the appellants were not members. Appellants claim that Ms. White flaunted the fact that she was chosen because she knew the "right people." As further evidence of their claim, the appellants allege that they each had better qualifications and greater seniority than did White.

In Count II, Ellis additionally alleges that he was denied the promotion to Head Nurse because of sex discrimination. In Count III, Daniels also alleges that she was denied the promotion because of her age. Finally, in Count IV, Roberts alleges that she too was the victim of political discrimination. Roberts contends that, because of White's promotion, she was reassigned to a less desirable work shift at the Post Office.

---

1. The National Labor Relations Act and Postal Reorganization Act claims were not presented in this appeal.

The appellees moved for partial dismissal or, in the alternative, partial summary judgment. The district court first addressed Counts II and III. With respect to Count II, Ellis' sex discrimination claim, the court held that Title VII provided the exclusive remedy in the context of federal employment discrimination. Similarly, with respect to Count III, Daniels' age discrimination claim, the court held that the ADEA provided the sole remedy. However, the court found that, while the Title VII and ADEA counts stated claims on which relief could be granted, they were nonetheless deficient since neither claim named the proper defendant. Relying on *McGuinness v. United States Postal Service*, 744 F.2d 1318 (7th Cir.1984), the court held that, under Title VII and, by inference, the ADEA, a plaintiff must name the head of the federal agency as a defendant. Therefore, since the plaintiffs in this case had sued only the United States Postal Service, the local postmaster, and White, the pleadings needed to be corrected. The district judge granted the plaintiffs leave to amend their complaint to sue the proper party; however, no correction was ever made.[2] These two counts were dismissed at a later date for failure to name the Postmaster General as defendant.

The district court also dismissed Counts I and IV, the political discrimination claims.

Interpreting these claims to be premised on section 1981, section 1985(3), and the due process clause, the court addressed each possibility seriatim. First, with respect to section 1981, the court held that it was unavailable in this case because it only redressed claims of racial discrimination. Second, the court dismissed the section 1985 claims on the grounds that the Postal Service, as a single entity, could not engage in the requisite conspiracy, and section 1985 could not reach non-racial animus. Finally, the court held that the appellants' political discrimination claims could not be brought directly under the fifth amendment. While believing that this court's decision in *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983), would not have *per se* foreclosed this remedy, the district court nonetheless held that a subsequent Supreme Court decision, *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), barred the requested fifth amendment relief in this case because an elaborate and comprehensive remedial scheme was already in place. Accordingly, the entire action was dismissed.

The appellants have presented only two issues which we need consider in this appeal.[3] First, we are asked to determine whether the district court justifiably dismissed the Title VII and ADEA claims for

---

**2.** Although the procedural history of this case is not essential to our holding, it is helpful for understanding why the district court dismissed the appellants' Title VII and ADEA claims.

On March 6, 1985, District Judge Norgle dismissed the appellants' political discrimination claims—Counts I and IV—for failure to state a claim. He held that an action for political discrimination was not cognizable under either Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), or the due process clause of the fifth amendment. At that time, Judge Norgle also held that the Postmaster General was the only proper party defendant for Counts II and III—the Title VII and ADEA claims, respectively. However, these latter two claims were not dismissed; rather, Judge Norgle granted the appellants until March 26, 1985 to amend their complaint to name the Postmaster General. The court set a status hearing for March 26, 1985.

However, on March 20, 1985, the appellants attempted to appeal the dismissals of Counts I and IV. At the district court's status hearing held on March 26, the appellants' counsel informed the court of the notice of appeal and indicated that the appellants would *not* amend their complaint to name the Postmaster General. Based on these representations, the district court dismissed Counts II and III.

The March 20 appeal was premature. When the appellants filed the notice of appeal, only two of their four counts were actually dismissed. Accordingly, this court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. On May 3, 1985, the appellants' initial appeal was dismissed because it was not a final order within the meaning of 28 U.S.C. § 1291.

On May 10, 1985, the appellants filed the present appeal challenging the district court's dismissal of Counts I, II, III and IV.

**3.** The appellants have also asked us to consider the scope of damages available under Title VII and the ADEA. Our disposition of this case makes it unnecessary to reach this issue.

failure to name the proper party defendant. Second, with respect to the fifth amendment political discrimination claims, the appellants ask us to decide whether the existence of a comprehensive remedial scheme is sufficient to preclude nonstatutory relief premised solely on the fifth amendment. Since we believe that the district court properly resolved both issues, we affirm.

## II

█ It is well-settled in this circuit that, in a Title VII action alleging discrimination in the Postal Service, the only proper defendant is the head of the agency—the Postmaster General. 42 U.S.C. § 2000e–16(c); *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322–23 (7th Cir. 1984); *see also Canino v. EEOC,* 707 F.2d 468, 472 (11th Cir.1983); *Hall v. Small Business Administration,* 695 F.2d 175, 180 (5th Cir.1983); *Davis v. Califano,* 613 F.2d 957, 958 n. 1 (D.C.Cir.1979). The only novel question presented by this case, then, is whether the same rule should apply to actions under the ADEA. We hold that it should.

Unlike Title VII, the ADEA does not specify who must be named as a proper party defendant in an age discrimination case. However, we find persuasive the reasoning set forth in *Gillispie v. Helms,* 559 F.Supp. 40 (W.D.Mo.1983). In that case, the court noted that the portion of the ADEA applicable to federal employees was patterned after a similar provision in Title VII. *Id.* at 41. When a section of the ADEA can be traced to a similar section of Title VII, the two provisions should be construed consistently. *See Oscar Mayer & Company v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); *see also Gillispie,* 559 F.Supp. at 41.

Like the *Gillispie* court, we find that the purposes of the ADEA are not impeded by requiring that the agency head be named as the only proper defendant. Title VII

shares with the ADEA a common purpose—the elimination of discrimination in the workplace. "[B]ecause the purpose of Title VII is fulfilled by just naming the agency head, then surely the purpose of the ADEA will be fulfilled by naming a like defendant." *Gillispie,* 559 F.Supp. at 41. Moreover, the appellants have not stated a single reason why the ADEA and Title VII should not be similarly construed in this case. Appellants' Br. at 14–17. Accordingly, we believe that the district court correctly required the plaintiffs to name the Postmaster General as the defendant in the ADEA claim.[4] Therefore, because the Postmaster General was named in neither the Title VII nor ADEA claims, both Count II and Count III were properly dismissed.

█ We note that the appellants are not the unwitting victims of a technical trap. In his initial opinion, the district judge informed the appellants that he considered their claims deficient for failure to name the proper defendant. However, he did not dismiss the claims; rather, he gave the appellants leave to amend their complaint to sue the proper party. *See supra* note 2. Yet, for some reason, this amendment was never made. At oral argument, we asked the appellants' counsel to explain why the complaint was never amended. He told us that the appellants chose not to amend because it would delay the appeal on the political discrimination claims—Counts I and IV. We are at a loss to understand this decision. The district court told the appellants that their pleadings were deficient; the court told them how to correct the pleadings; and the appellants were given time to effect these changes. Nonetheless, they did not amend. Therefore, we will not hear the appellants to claim that the dismissal of the ADEA and Title VII counts was inequitable or denied them substantial justice.

---

**4.** *See Bechtel v. United States Office of Personnel Management,* 549 F.Supp. 111, 113 (N.D.Ga. 1982) (agency head is the proper defendant under the ADEA); *see also Carter v. Marshall,* 457 F.Supp. 38, 41 (D.D.C.1978) (ADEA claim

against the Department of Labor is appropriate where the Secretary is named as a party defendant). To the extent that these cases suggest in dicta that the agency or the United States is a proper party, we decline to follow them.

## III

The appellants' second argument is that the district court improperly dismissed their political discrimination claims, Counts I and IV, for failure to state a claim. Relying on *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the district judge dismissed the portion of the claim which rested on the due process clause of the fifth amendment.[5] It is this issue which we now consider.[6]

In *Bush,* an employee of the National Aeronautics and Space Administration (NASA) charged that he had been demoted because of statements he made regarding the quality of operations at his workplace. While his administrative appeal was pending, he brought an action for the alleged violation of his constitutional rights. The Supreme Court refused to allow such an action. Because Bush's claims arose out of an employment relationship that was governed by comprehensive procedural and substantive provisions which gave meaningful remedies against the government, the Court held that reliance on a new, non-statutory damage remedy was inappropriate. *Bush,* 462 U.S. at 390, 103 S.Ct. at 2417.

In reaching its decision, the Supreme Court traced the history of constitutional causes of action through *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Synthesizing these cases, the Court concluded that, when Congress creates a remedy for constitutional violations, Congress may clearly express its intent that the courts not create an additional, implied

remedy. Absent such a congressional directive, "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Bush,* 462 U.S. at 378, 103 S.Ct. at 2411.

In *Bush,* the Court declined to create a constitutional cause of action because it found a "factor[ ] counselling hesitation." *Id.* The Court recognized that "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed."[7] *Id.* at 385, 103 S.Ct. at 2415. There was no need, therefore, for the Court to augment this comprehensive scheme by creating an alternative judicial remedy for the constitutional violation. *Id.* at 389, 103 S.Ct. at 2417.

In the present case, the district court found that the "same general civil service remedies" found in *Bush* were also applicable to the appellants. *Ellis v. United States Postal Service,* No. 84 C 2160, Order at 7 (N.D.Ill. Mar. 6, 1985). The appellants were unable to demonstrate, in either the district court or this court, how the means for redressing grievances in the Postal Service are markedly less adequate or less comprehensive than the civil service remedies found in *Bush.* Since the Congress expressly authorized the adoption of final and binding grievance provisions in Postal Service collective bargaining agreements, 39 U.S.C. § 1206(b), and since the particular collective bargaining agreement between the Postal Service and the employ-

---

**5.** The district judge also dismissed the statutory bases for these counts (42 U.S.C. §§ 1981, 1985(3)), and that decision has not been challenged in this appeal.

**6.** We will assume for the sake of this discussion that the appellants, if given the chance, could have established a protected interest under the applicable postal regulations.

**7.** In *Bush,* the NASA employee was able to utilize a number of administrative steps to challenge his demotion. First, he "had the opportunity to file a written response and to make an oral presentation to agency officials." 462 U.S. at 370, 103 S.Ct. at 2407. In addition, he was able to take appeals to both the Federal Employee Appeals Authority and the Civil Service Commission's Appeals Review Board. *Id.*

ees' union establishes a multi-step procedure which culminates in binding third-party arbitration, Appellees' App. at 5–9, we are unable to determine how this system is less adequate than the one in *Bush. See Winston v. United States Postal Service*, 585 F.2d 198 (7th Cir.1978). Therefore, we affirm the district court's decision.

The appellants contend that our current holding is foreclosed by our previous decision in *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983). However, we see no such inconsistency. In *Egger*, this court, sitting *en banc*, held that an FBI agent could maintain a *Bivens*-type action for alleged deprivations of certain constitutional rights arising out of his employment relationship. Writing before the Supreme Court's decision in *Bush*, we relied heavily on the fact that FBI agents were not afforded the administrative remedies available to most other government employees. We noted that the nonexistence of an adequate civil service remedy militated in favor of establishing a *Bivens*-type remedy. *Id.* at 298. The continued vitality of *Egger* is not before us today. Nor, assuming its continued vitality, is the question of its scope. We explicitly decline to express an opinion on those questions. For now, we hold only that where, as here, Congress has authorized a broad, remedial scheme which adequately and comprehensively addresses the protection of constitutional rights in the employment context, *Bush* does not permit us to apply a separate constitutional cause of action.

The judgment of the district court is affirmed.

AFFIRMED.