V. Carol ROBBINS, Plaintiff–Appellant,

v.

Lloyd BENTSEN in his capacity
as Secretary of the Treasury,
Defendant–Appellee.

V. Carol ROBBINS, Plaintiff–Appellant,

v.

Keith FAUST, Joe Williams and Donald
Werner, Defendants–Appellees.

Nos. 94–1743, 94–1744.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1994.

Decided Dec. 8, 1994.

James P. Baker (argued), Springfield, IL, for plaintiff-appellant.

James A. Lewis, Elizabeth L. Collins (argued), Asst. U.S. Attys., Springfield, IL, for defendants-appellees.

Before FLAUM and KANNE, Circuit Judges, and WILL,[*] District Judge.

FLAUM, Circuit Judge.

Plaintiff V. Carol Robbins brought suit against her employers and supervisors at the Internal Revenue Service in two separate civil actions. She alleged in the first an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. She alleged in the second that her supervisors had violated her rights under the First and Fifth Amendments by removing her from a supervisory position and initiating an unwarranted investigation against her. The district court dismissed both complaints for failure to state a claim upon which relief could be granted, and we now affirm.

## I.

V. Carol Robbins has worked for the Internal Revenue Service ("IRS") since 1979 as a Revenue Agent in the Examination Division of the Springfield District. During 1990 and 1991, Robbins was a Team Coordinator in the examination of a large corporate taxpayer. As Team Coordinator, Robbins was responsible for organizing, coordinating and supervising the individuals who participated in the examination. In the course of this examination, Robbins came into possession of certain taxpayer documents she should not have had and retained them for a number of days. Shortly after this incident, in October 1991, Robbins's superiors removed her as Team Coordinator. Robbins then requested the Inspection Division of the IRS to investigate certain perceived improprieties by her superiors in the same taxpayer examination. These superiors, in turn, either recommended or consented to and approved of a criminal investigation of Robbins by the IRS's Inspection Division because of her retaining the documents.

On October 31, 1991, Robbins filed with the Regional Complaint Center of the United States Department of the Treasury an administrative complaint alleging discriminatory employment treatment. After receiving no decision on the administrative complaint within 180 days, Robbins filed a employment discrimination claim ("*Robbins* I") in two counts against the Secretary of the Treasury in the United States District Court for the

---

[*] The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois is sitting by designation.

Central District of Illinois on July 29, 1992. She alleged in Count I that she had been passed over for a promotion in retaliation for her pursuit of a gender discrimination claim in 1989. She alleged in Count II that her superiors had removed her as Team Coordinator in October 1991, and initiated a retaliatory investigation of her activities during this time because of the 1989 gender discrimination claim as well as a subsequent 1991 discrimination claim.

On October 30, 1992, the Treasury Department notified Robbins that it was terminating the processing of her administrative complaint because Robbins had filed a civil action in a district court based on the same matters. The Department also informed Robbins:

> If you are dissatisfied with this decision, you are entitled to file a civil action in the appropriate United States District Court, *OR*, you may first file an appeal with the Equal Employment Opportunity Commission (EEOC)....
>
> If you choose to file a civil action, the action *MUST* be filed with the Clerk of the appropriate U.S. District Court WITHIN NINETY (90) CALENDAR DAYS OF THE DATE on which you receive this decision. *The Department cannot extend this time limit.*

(emphasis in original).

On May 29, 1993, the district court dismissed *Robbins* I for failure to serve the United States within 120 days, pursuant to Fed.R.Civ.P. 4(j). *Robbins v. Brady*, 149 F.R.D. 154 (C.D.Ill.1993). Consequently, Robbins filed a complaint identical to Count I in *Robbins* I on August 25, 1993. ("*Robbins* II") The government moved to dismiss *Robbins* II on the grounds that it had been filed more than 90 days after the October 20, 1992 notice. Moreover, they argued, even if the 90 day period had been equitably tolled during the pendency of *Robbins* I, *Robbins* II was filed more than 90 days after the dismissal of *Robbins* I.

Robbins filed *Robbins* III on October 7, 1993. In allegations similar to those outlined in Count II of *Robbins* I, Robbins sought damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the superiors who had removed her from her Team Coordinator post and initiated the investigation. Robbins alleged that her superiors had violated her rights under the First and Fifth Amendments by removing her without notice or a hearing and then initiating an investigation against her in response to her speaking out during the 1991 taxpayer examination. Arguing that Robbins could not bring this *Bivens* action, the superiors moved to dismiss *Robbins* III for failure to state a claim for which relief could be granted under Fed. R.Civ.P. 12(b)(6).

The district court dismissed both *Robbins* II and *Robbins* III. In *Robbins* II, the court found that the October 20, 1992, agency letter to Robbins did constitute a final decision and thus that the complaint was time-barred. The court determined in *Robbins* III that Robbins had an adequate administrative remedy for her claims and that the Supreme Court's decision in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), therefore prevented her from bringing a *Bivens* action. This consolidated appeal of both dismissals followed.

## II.

*Robbins* II presents the question whether an agency's dismissal of an administrative investigation of an employment discrimination claim without a decision on the merits constitutes a "final action" for the purposes of Section 717(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and its attendant regulations. The issue is a matter of first impression for this or any other circuit.[1]

Section 2000e–16 explicitly limits the time within which a party may file an employment discrimination case against the federal government:

---

1. A district court in the Eastern District of Louisiana did confront this issue in an unreported order. *English v. Freeh*, 1994 WL 160487 (E.D.La. April 22, 1994). There the defendants contended that the agency dismissal was a final decision. In the absence of plaintiff's response to this argument, the court found for the defendants.

Within 90 days of receipt of notice of final action taken by a[n] ... agency, ... or after one hundred and eighty days from the filing of the initial charge with the ... agency, ... if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action....

42 U.S.C. § 2000e–16(c).

In addition to § 2000e–16(c), several regulations also address the relevant time limits for the filing of federal employment discrimination suits, although the parties dispute which set of regulations governs the cancellation of Robbins's claim: 29 C.F.R. § 1613 or 29 C.F.R. § 1614. When Robbins filed her claim on October 31, 1991, the section 1613 regulations clearly governed the matter. However, when the Equal Employment Opportunity Commission ("EEOC") promulgated § 1614 on April 10, 1992, it stated in the preamble that "Complaints filed under 29 C.F.R. 1613 will be processed under the procedures of this part ..." with certain exceptions and qualifications not relevant to the present case. 57 F.R. 12646 (1992). Because the agency issued its dismissal notice to Robbins on October 20, 1992, section 1614 rather than 1613 applies to the dismissal of Robbins's complaint.[2]

Section 1614 potentially affects Robbins's case in two ways. First, section 1614.107(c) requires that once an employee has filed a civil action, the agency shall dismiss the complaint "[t]hat is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint...." 29 C.F.R. § 1614.107(c). Dismissals of complaints are appealable to the Commission, but any appeal must be filed within 30 days of receipt of notice of the dismissal. 29 C.F.R. §§ 1614.401(a), 1614.402(a).

Second, the regulations provide that an employee who has filed an individual complaint may file such an action "[a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been

filed and a final decision has not been issued." 29 C.F.R. § 1614.408(b). Additionally, if a final decision has been issued, employees must file a civil action within 90 days of that decision. 29 C.F.R. § 1614.408(a). The regulations stipulate that final decisions "shall consist of findings by the agency on the merits of each issue in the complaint...." 29 C.F.R. § 1614.110.

We are thus faced with a statute that speaks of a "final action" and a "final disposition," regulations that speak of "final decisions," and comparably little guidance as to how to reconcile the two. Robbins argues that the language and structure of § 1614 indicates that only final decisions on the merits commence Title VII's 90–day limitation period. She contends that the agency dismissal was not a final decision under the regulations because the dismissal did not contain any findings on any merits of any issue. Therefore, Robbins concludes, the 90–day limitation period does not apply to her case. The government replies that the dismissal was clearly a "final action" under the plain language of the statute, that "final decisions" under § 1614.110 do not exclusively constitute the set of "final actions," that the agency considered its action final as indicated by the letter the agency sent to Robbins informing her of the dismissal, and that the letter put Robbins on notice that the ninety-day limitations period had begun to run.

We agree with the government that final decisions on the merits are not the only agency actions that trigger the time bar of § 2000e–16(c). The statute requires filing a civil suit within 90 days of a final agency action. The fact that the regulations require a civil suit to be filed within 90 days of a final decision on the merits does not compel the conclusion that only final decisions trigger the statutory limitation. Regulations cannot trump the plain language of statutes, and we will not read the two to conflict where such a reading is unnecessary. Rather than interpret the regulations as excluding agency dismissals from the class of agency actions that

---

**2.** We also note that the decision letter sent to Robbins indicated that the agency had decided her case on the basis of the § 1614 regulations.

trigger the statutory ninety-day limitations period, we think the regulations do not explicitly authorize the filing of a civil suit based on a § 1614.107(c) dismissal merely because such a suit is already pending and any authorization would be redundant.

Additionally, Robbins's interpretation of what constitutes a "final decision" would contravene Title VII's policy of encouraging administrative resolution of employment discrimination disputes in two distinct ways. First, if we accepted Robbins's argument that the dismissal of her claim was not appealable as a final decision, the dismissal would not be a final decision only because Robbins had failed to file an administrative appeal of the dismissal to the EEOC. As noted earlier, section 1614.401 permits appeals of dismissals to the EEOC. Decisions issued on such appeals are considered "final decisions" within the meaning of § 1614.408 unless there is a motion for reconsideration. 29 C.F.R. § 1614.405. If the initial dismissal itself were not appealable but the administrative appeal of that dismissal to the EEOC was, then we would likely have to hold that Robbins had not exhausted administrative remedies and dismiss her claim on that ground. *See Pack v. Marsh,* 986 F.2d 1155, 1157 (7th Cir.1993) (*per curiam*). To rule otherwise would encourage complainants to avoid administrative appeals.

Second, if those employees who opted out of the administrative process by filing civil law suits did not face the ninety-day time limit, they would have greater rights to refile dismissed suits than those employees who remained within the administrative system. Conversely, under Robbins's theory, a person whose complaint was dismissed for any of the myriad reasons found in 29 C.F.R. § 1614.107 before 180 days would have no immediate right to file an action in civil court but would have to wait until the 180 days had passed.

Finally, we note that our decision in *Pack v. Marsh,* 986 F.2d 1155 (7th Cir.1993) (*per curiam*), is not to the contrary. In *Pack,* this Court affirmed an agency dismissal of Pack's employment discrimination complaint because Pack had failed to exhaust her administrative remedies. *Id.* at 1157. We did

not question Pack's right to appeal the agency's "final decision" independent of the exhaustion requirement. Robbins was faced with a similar "final decision" and chose not to appeal it. Robbins's failure to appeal indicates an acceptance of that decision.

Repackaging her arguments with regard to what constitutes a "final decision," Robbins also asserts that she was not "aggrieved by the final disposition" of her complaint because she could not complain of the failure of the agency to undertake an investigation redundant to her civil suit. Therefore, Robbins contends, she should not be bound by what she could not appeal. The government replies that the "aggrieved" language refers only to a complainant's ability to file an appeal, not to Robbins's subjective state as to whether she ought to file an appeal, and that she therefore was aggrieved.

■ We hold that Robbins was "aggrieved" by the October 20, 1992 dismissal for the purposes of 42 U.S.C. § 2000e–16. At the very least, Robbins was informed that the dismissal had important consequences for her filing a future complaint. Regardless of whether the agency properly determined that the ninety-day limitations period was running as of October 20, 1992, the dismissal as sent clearly cut off Robbins's right to initiate a civil suit against the government after ninety days. At that point, Robbins had the opportunity and obligation to appeal that determination, lest she forfeit that right. Her failure to do so does not mean she was not aggrieved by that decision; on the contrary, her inaction indicates her acquiescence.

■ Having determined that Robbins was required to commence her civil suit within ninety days of the dismissal of her administrative complaint, we affirm the district court's decision to dismiss *Robbins II*. *Robbins I* was dismissed without prejudice under Fed.R.Civ.P. 4(j), but "without prejudice" does not mean "without consequence." *Powell v. Starwalt,* 866 F.2d 964, 966 (7th Cir. 1989). We have previously permitted the dismissal of a discrimination suit for failure to file within Title VII's time limits after a first suit was dismissed for failure to effect service, *Harris v. Brock,* 835 F.2d 1190 (7th

Cir.1987); *see also Wilson v. Grumman Ohio Corp.,* 815 F.2d 26 (6th Cir.1987) *(per curiam )* (same), and see no reason not to do the same here.

### III.

■ Robbins has also attempted to bring a *Bivens* action against her superiors for violating her Fifth and First Amendment rights. Robbins argues that she neither received proper notice nor had an opportunity to respond to the concerns that gave rise to her removal as Team Coordinator and to the investigation of her activities. She also contends that her speaking out about improprieties in the audit of a corporate taxpayer led to the removal and investigation, both of which in turn damaged her reputation and career opportunities, all in violation of the First Amendment. Because Robbins had available a congressionally created administrative remedy, *Bivens* and its progeny do not permit Robbins's complaint to withstand the defendant's motion to dismiss.

■ We note at the outset our skepticism that Robbins has even stated violations of the Fifth or First Amendments, let alone ones cognizable under *Bivens.* With regard to the Fifth Amendment claim, it is highly questionable whether Robbins had a "liberty interest" in her position as Team Coordinator that was taken without due process of law. Moreover, the Constitution does not protect individuals against mere defamation. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). The Supreme Court has also explicitly held that the right to due process does not include the substantive right to be free of criminal prosecution without probable cause. *Albright v. Oliver,* ——— U.S. ———, ——— – ———, 114 S.Ct. 807, 812–14, 127 L.Ed.2d 114 (1994) (plurality); *id.* at ———, 114 S.Ct. at 819 (Souter, J., concurring). With regard to the First Amendment claim, this Court has held that "an investigation conducted in retaliation for comments protected by the first amendment could be actionable under section 1983." *Rakovich v. Wade,* 850 F.2d 1180, 1189 (7th Cir.) *(en banc ), cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Nonetheless, it is not certain whether an internal protest

regarding an investigation of a private taxpayer amounts to speaking out on a matter of public concern under the tests of *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Given that uncertainty, it seems likely that Robbins's superiors would be granted qualified immunity from suit. *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175–76 (7th Cir.1994); *Rakovich,* 850 F.2d at 1210; *Benson v. Allphin,* 786 F.2d 268, 276 (7th Cir.), *cert. denied,* 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986). The Supreme Court has repeatedly warned against extending *Bivens,* which on its facts involved an egregious breach of the Fourth Amendment by federal agents, into new arenas. *F.D.I.C. v. Meyer,* —— U.S. ———, ———, 114 S.Ct. 996, 1005, 127 L.Ed.2d 308 (1994); *Schweiker v. Chilicky,* 487 U.S. 412, 421, 108 S.Ct. 2460, 2466, 101 L.Ed.2d 370 (1988). We are inclined to follow that admonition.

■ Assuming, however, that Robbins did state constitutional claims, Robbins's claim does not present a proper case for *Bivens* remedy. *Bivens* actions are not viable in two situations:

> The first is when defendants demonstrate "special factors counseling hesitation in the absence of affirmative action by Congress." ... The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective.

*Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (citations omitted, emphasis in original); *see also Bivens,* 403 U.S. at 396, 91 S.Ct. at 2005 (noting that remedies should be available primarily where "no special factors counseling hesitation in the absence of affirmative action by Congress" are present).

The Supreme Court has further demarcated the boundaries of *Bivens* in two significant cases: *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) and *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). In *Bush,*

Bush, a NASA employee, was demoted after making public statements critical of his supervisors and of NASA. Bush protested the demotion in various administrative appeals and eventually won reinstatement and back pay. *Bush,* 462 U.S. at 369–71, 103 S.Ct. at 2406–08. At the same time, Bush pursued constitutional remedies under *Bivens* in the federal court, arguing that his administrative remedy was insufficient because it did not fully compensate him for his harms. *Id.* at 372, 103 S.Ct. at 2408. After assuming for the purposes of the case that Bush's superiors had violated his First Amendment rights and that his civil service remedies were not as effective as an individual damages remedy,[3] the Court held that Bush could state no claim for relief under *Bivens.* The Court viewed the extensive and comprehensive administrative system Congress had established to address the complaints of civil service employees as a "special factor" counseling against the creation of an alternative judicial remedy. *Id.* at 388, 103 S.Ct. at 2416–17. Congress had already provided Bush a "meaningful" remedy for any wrongs he had suffered. If Bush deserved constitutional as well as administrative redress of his grievances, Congress and not the courts should authorize it. *Id.* at 389–90, 103 S.Ct. at 2417–18.

In *Schweiker v. Chilicky,* a group of Social Security recipients claimed that they had been denied due process in the administration of their Social Security disability benefits. As a consequence of an attempt to reduce the costs of the disability benefits program, the plaintiffs had had their disability benefits wrongly terminated by state agencies, only to have them reinstated by an administrative law judge. Congress eventually addressed these problems by providing for a continuation of benefits after a termination pending the administrative judge's decision. 487 U.S. at 415–17, 108 S.Ct. at 2463–65. While reinstatement did provide the plaintiffs with back benefits, and while Congress's action did remedy the problem for

the future, there was "little doubt" that the old termination policy had "led to many hardships and injuries that could never be adequately compensated" through this administrative scheme. *Id.* at 417, 108 S.Ct. at 2464.

Despite the admitted incompleteness of administrative remedies, the *Chilicky* Court nevertheless declined to create a *Bivens* remedy for the plaintiffs. The Court found the case indistinguishable from *Bush* because, given "the comprehensive statutory schemes involved, the harm resulting from the alleged constitutional violation" could not "be separated from the harm resulting from the denial of the statutory right." *Id.* at 428, 108 S.Ct. at 2470. "Whether or not we believe that its response was the best response," the Court asserted, "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program." *Id.* at 429, 108 S.Ct. at 2470. Where "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.* at 423, 108 S.Ct. at 2468.

Taken together, *Bush* and *Chilicky* stand for the proposition that courts may not provide constitutional remedies to supplement a congressionally-established administrative system even where that system's remedies are not as complete as the constitutional remedy might be. Robbins's superiors argue that the mechanisms of the Civil Service Reform Act of 1978, 5 U.S.C. § 2301 *et seq.,* ("CSRA"), provide a comprehensive system to address any inappropriate personnel practices of which Robbins has complained.[4] Under the CSRA, the Office of Special Counsel ("OSC") "shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited person-

---

3. The Court noted that both propositions were debatable. *Bush,* 462 U.S. at 372–73 & nn. 8 & 9, 103 S.Ct. at 2408–09 & nn. 8 & 9.

4. Contrary to the government's assertions, we do not think that Title VII would provide any sort of remedy for Robbins's constitutional claims, which are based on due process and free speech arguments rather than gender discrimination.

nel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A). Included in the list of prohibited personnel practices is any action in violation of the Merit System Principles ·for federal employees. 5 U.S.C. § 2302(b)(11). The Merit System Principles specifically require that "[a]ll employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management ... with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2). Thus, the question before us is whether this congressionally-established remedial system precludes our creation of an alternative remedy under the Constitution.

If we were to rely on *Bush* and *Chilicky* alone, Robbins might conceivably, albeit with great difficulty, be able to contend that the CSRA does not preclude a constitutional remedy in this case. However, in two cases this Court established a cordon around whatever room for argument *Bush* and *Chilicky* might have left Robbins: *Feit v. Ward,* 886 F.2d 848 (7th Cir.1989), and *Moon v. Phillips,* 854 F.2d 147 (7th Cir.1988). In *Feit,* Feit had worked as a seasonal employee with the United States Forest Service for five years. On the day before he was to commence work in the sixth year, Feit participated in a protest against ·Native American spearfishing in northern Wisconsin and was arrested and charged with disorderly conduct. The Forest Service terminated Feit because of his actions, and Feit brought a *Bivens* action against his employers. *Feit,* 886 F.2d at 849–50. This Court held that the option provided by the CSRA for federal employees like Feit, namely the opportunity to file a complaint with the OSC, provided Feit with a sufficiently "meaningful" remedy that foreclosed the invocation of *Bivens. Id.* at 852–55; *see also Germane v. Heckler,* 804 F.2d 366, 369 (7th Cir.1986) (noting that "the Supreme Court has already determined that the intricate regulatory framework that Congress has designed to protect the First Amendment rights of its civil service employees is a 'special factor counselling hesitation' "); *Ellis v. United States Postal Service,* 784 F.2d 835, 839–40 (7th Cir.1986) (holding that the Postal Service's collective bargaining agreement providing for binding arbitration of employment disputes provided an adequate alternative remedy foreclosing plaintiff's *Bivens* action).

The facts of *Moon v. Phillips* present a scenario even closer to the present case. Moon, an IRS employee, had refused to prepare a false report for his superiors regarding the harassment of a citizen in the Federal Building in Milwaukee. *Moon,* 854 F.2d at 148. ·Moon claimed that his superiors then denied him a promotion as a result of the refusal, a denial in violation of his First and Fifth Amendment rights of free speech and due process. *Id.* The court held that Moon had an adequate administrative remedy for his grievance through the Merit Systems Protection Board and denied his claim, remarking that Moon "must be left to his administrative remedies as others in this circuit have been before him." *Id.* at 152.

█ We find these cases compelling. We are clearly presented with a situation in which Congress has provided an elaborate remedial scheme, the CSRA, for the protection of Robbins's constitutional rights in the employment context. Robbins had the opportunity under the CSRA to bring any "prohibited personnel practice" to the attention of the OSC, which could have then investigated her complaint. Where Congress has enacted such a remedial scheme, "*Bush* does not permit us to apply a separate constitutional cause of action." *Ellis v. United States Postal Service,* 784 F.2d 835, 840 (7th Cir.1986). We also note that other circuits have uniformly adopted the same approach. *See, e.g., Jones v. Tennessee Valley Auth.,* 948 F.2d 258, 262–64 (6th Cir.1991); *Lombardi v. Small Business Admin.,* 889 F.2d 959, 960–61 (10th Cir.1989); *Volk v. Hobson,* 866 F.2d 1398, 1402–03 (Fed.Cir.), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989); *Montplaisir v. Leighton,* 875 F.2d 1, 2 (1st Cir.1989); *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989); *McIntosh v. Turner,* 861 F.2d 524, 525–26 (8th Cir.), *cert. denied sub nom. McIntosh v. Carlucci,* 487 U.S. 1217, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988); *Spagnola v. Mathis,* 859 F.2d 223, 227–29 (D.C.Cir.1988) (*en banc* ); *Gremillion v. Chivatero,* 749 F.2d 276, 277–80 (5th Cir. 1985); *Pinar v. Dole,* 747 F.2d 899, 908–09

(4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). Indeed, some courts have refused to "create a *Bivens* remedy in a Federal employment action even if no remedy at all has been provided by the CSRA." *Lombardi,* 889 F.2d at 961; *see.also Saul v. United States,* 928 F.2d 829, 839–40 (9th Cir.1991); *Volk,* 866 F.2d at 403; *Pinar,* 747 F.2d at 912.[5]

Finally, Robbins relies on three cases, *Krueger v. Lyng,* 927 F.2d 1050 (8th Cir. 1991), *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328 (9th Cir.1987), and *Williams v. Internal Revenue Service,* .745 F.2d 702 (D.C.Cir.1984), to suggest that where the CSRA has not provided a complete remedy, a *Bivens* action should· be appropriate. That reliance is wholly misplaced. In *Krueger,* the Eighth Circuit held that a federal employee who was specifically excluded from the extensive remedies of the CSRA could maintain a *Bivens* action for his retaliatory discharge. 927 F.2d at 1052–54. *Krueger* provides little guidance for a case, like the present one, where an employee covered under the CSRA complains of injury. So long as an employee falls within the realm of the CSRA, the CSRA's extensiveness strongly advocates against augmenting that remedy. *Schowengerdt* is equally unhelpful. Although the Ninth Circuit did hold in *Schowengerdt* that the plaintiff could state a constitutional violation for the search and seizure of his office furnishings, the court subsequently called that holding into question in *Saul v. United States,* 928 F.2d 829, 839–40 (9th Cir.1991), in light of the Supreme Court's decision in *Chilicky.* The D.C. Circuit placed similar limits on *Williams,* a case analogous to *Schowengerdt,* in a unanimous *en banc* decision, *Spagnola v. Mathis,* 859 F.2d 223, 230 (D.C.Cir.1988) (*en banc* ).

Robbins has failed to distinguish the rationales of *Bush* or *Chilicky,* our holdings in *Feit, Moon* and *Ellis,* or the abundant case law in other circuits, from the present case. The CSRA provided Robbins, like Feit and Moon, the opportunity to file a complaint with OSC. We decline to interfere with the statutory remedial system Congress has es-

tablished and fashion constitutional remedies for Robbins. We therefore hold that the district court appropriately determined that Robbins .had failed to state any constitutional claims for which relief could be granted.

For the foregoing reasons, we affirm both decisions of the district court to dismiss Robbins's complaints.

AFFIRMED.

---

5. Because we hold that Robbins's claim falls within the ambit of the CSRA, we do not address whether the CSRA bars all *Bivens* claims by federal merit employees.