**Richard HAYS, Plaintiff,**

v.

**Franny A. FORSMAN, Rebecca Blaskey, and Michael Pescetta Defendants.**

No. 05–CV–00594–DAEVPC.

United States District Court, D. Nevada.

Sept. 27, 2006.

Lynne Jaben Bratcher, Kansas City, MO, Ian E. Silverberg, Hardy Law Group, Reno, NV, for Richard Hays, Plaintiff.

Thomas D. Beatty, Las Vegas, NV, for Afpd Rebecca Blaskey, Defendant.

Kathleen J. England, Las Vegas, NV, for Franny A. Forsman, Defendant.

Jen J. Sarafina, Kamer Zucker & Abbott, Las Vegas, NV, for Afpd Michael Pescetta, Defendant.

Carol Davis Zucker, Kamer Zucker & Abbott, Las Vegas, NV, for Afpd Michael Pescetta, Defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

EZRA, District Judge.

The Court heard Defendants' Motions on September 13, 2006. Lynne Bratcher, Esq., appeared at the hearing with Plaintiff; Thomas Beatty. Esq., appeared at the hearing with Defendant Rebecca Blaskey; Kathleen England, Esq., appeared at the hearing with Defendant Franny A. Forsman; Carol Zucker, Esq., appeared at the hearing with Defendant Michael Pescetta. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants' Motions to Dismiss (Doc. Nos. 9, 11, 13, and 14).

## BACKGROUND

### A.  Factual Background

This case involves a wrongful termination suit brought by Plaintiff Richard "Rick" Hays, a former investigator with the Federal Public Defender's Office in the District of Nevada. Defendants Franny A. Forsman ("Defendant Forsman"), Rebecca Blaskey ("Defendant Blaskey"), and Michael Pescetta ("Defendant Pescetta"), were all employed at the same office as Plaintiff. Defendant Forsman is the Federal Public Defender of the District of Nevada. During the events alleged in this action, Defendant Blaskey and Mr. Pescetta were Assistant Federal Public Defenders in the District of Nevada.

During April 2004, Plaintiff was assigned to work on the mitigation phase of a death penalty case that was handled by Defendant Blaskey. According to Plaintiff, it was his opinion that Defendant Blaskey had ineffectively assisted a client whose federal habeas petition was due in 30 days and whose case had allegedly not received the attention necessary to meet minimum effective assistance requirements. Plaintiff's First Amended Complaint at ¶ 10.[1] Plaintiff complained to Defendant Blaskey and other employees in the office, and went one step further by sharing his concerns with the client's mother. *Id.* at ¶¶ 10, 11.

On May 3, 2004, Plaintiff emailed Defendant Blaskey to inform her about the client's mother's response. As a result, a meeting with Plaintiff was called the following day. It is alleged by Plaintiff that during the May 4 meeting, Plaintiff was

---

1. Plaintiff apparently filed his First Amended Complaint without any certificate of service, and although dated December 22, 2005, the First Amended Complaint was not served on any Defendant until March 10, 2006.

repeatedly asked whether he had "defended" Defendant Blaskey to the client's mother. Plaintiff's First Amended Complaint at ¶ 12. Ultimately, Plaintiff was terminated from his employment with the Reno branch of the Federal Public Defender's Office during the meeting.[2]

Approximately three days after he was fired, Plaintiff filed a written grievance to Defendant Forsman and Michael Kennedy, the First Assistant Federal Public Defender for the District of Nevada ("Mr.Kennedy"). Plaintiff also filed a complaint with the Nevada State Bar Association concerning Defendant Blaskey's handling of the habeas client's case.

Plaintiff was interviewed about his grievance on May 24, 2004. In July 2004, he was assigned as a temporary investigator in the Reno branch of the Federal Public Defender's Office. When that position became open permanently at the end of August of 2004, Plaintiff applied. According to Plaintiff, attorneys from the Reno office interviewed and unanimously voted to hire him and an offer was extended in September of 2004, only to be rescinded by Defendant Forsman via letter on October 19, 2004. On November 1, 2004, Plaintiff was re-interviewed for the Reno position, this time with Defendant Forsman and Mr. Kennedy. Plaintiff asserts that this November 1 interview focused primarily on the complaint Plaintiff had filed against Defendant Blaskey with the Nevada Bar Association.

In early November 2004, Plaintiff was informed that he was not selected for the investigator position. Instead, he asserts, in February 2005 Defendant Forsman made the decision to terminate him for a second time because he had filed the complaint against Defendant Blaskey with the Nevada Bar Association.

**B.  Procedural Background**

Plaintiff filed his original Complaint on November 3, 2005 and service was effected by mail. On December 22, 2005, Plaintiff filed his First Amended Complaint (Document 6), but the pleading lacked any certificate of service, antedated the Court's electronic filing system, and was not served on any Defendant in this action until March 10, 2006. Defendant Michael Pescetta filed his Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Document 9) on January 30, 2006. Defendant Rebecca Blaskey filed her own Motion to Dismiss for Failure to State a Claim for Relief (Document 11) on January 31, 2006. Both of these motions were joined and adopted by Defendant Franny A. Forsman on January 31, 2006 (Document 13). Defendants learned that Plaintiff had filed a First Amended Complaint through the Court's electronic filing system and after they had filed their Motions to Dismiss. Accordingly, Defendants duly filed Supplements (Documents 12 and 14) to note that its Motions to Dismiss incorporated Plaintiff's First Amended Complaint. Plaintiff filed his Memorandum in Opposition to Defendants' Motions to Dismiss (Document 27) on March 10, 2006. Replies were filed by Defendants Blaskey and Pescetta on March 30, 2006 (Documents 33 and 34, respectively).

*STANDARD OF REVIEW*

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

---

2.  Present at the meeting were Plaintiff, Defendant Blaskey, Mr. Pescetta, and another employee of the Federal Public Defender's Office, Kahren O'Brien. Plaintiff's First Amended Complaint at ¶ 12.

to relief. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005). Review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Livid Holdings,* 416 F.3d at 946. However, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988).

## DISCUSSION

The question in this case is whether Plaintiff may sue his federal employer, and other federal employees of the same office, for damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for alleged wrongful acts that were undertaken in connection with his employment as an investigator with the Federal Public Defender's Office in the District of Nevada. The Court concludes that Plaintiff may not, and accordingly GRANTS Defendants' Motions to Dismiss.

### I. *Defendant Rebecca Blaskey*

■ Defendant Blaskey argues that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. To support this argument, Defendant Blaskey states that Plaintiff's Complaint does not allege any facts to state a claim against Defendant Blaskey under any conceivable legal theory. Defendant Blaskey notes that she is mentioned by name, as defendant, or included in the plural word "defendants," in only three paragraphs in the Complaint as having actually taken or omitted some action as to Plaintiff.

Plaintiff counters that Defendant Blaskey was in a supervisory position and be-cause she allegedly committed an unethical act that prompted Plaintiff to file a complaint against her with the Nevada Bar Association, she was instrumental in Plaintiff's discharge. (Pls.' Resp. at 6, 7). Plaintiff then cites several paragraphs of the Complaint in support of this position; however, upon review by the Court, none of the seven paragraphs cited allege any facts that support Plaintiff's contention. (See Compl. ¶¶ 1, 10, 11, 12, 16, 25, 26).

Under the 12(b)(6) standard, Plaintiff's Complaint fails to state a claim upon which relief can be granted. First, Plaintiff has not pled any facts relating to a claim that Defendant Blaskey violated Plaintiff's First and Fourteenth Amendment rights. Second, Plaintiff's Complaint is devoid of allegations of any act or omission by Defendant Blaskey sufficient to state a claim under any legal theory.

### II. *Defendants Michael Pescetta and Franny A. Forsman*

■ Plaintiff filed his Complaint against Defendants individually, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Compl. ¶¶ 6, 7, 8. The Complaint is directed at the Federal Public Defender and employees of the Federal Public Defender's Office in the District of Nevada and was brought by Plaintiff as an employee or former employee of that office. In *Bivens,* the United States Supreme Court held that a plaintiff could sue federal officers individually for damages cause by constitutional torts under color of their authority. *See Adams v. Johnson,* 355 F.3d 1179 (9th Cir.2004).

The Federal Public Defender's Office is established under the Criminal Justice Act, 18 U.S.C. § 3006A(a). 18 U.S.C. § 3006A(g)(2) provides for two types of defender organizations, of which the Dis-

trict of Nevada has selected a defender organization supervised by a Federal Public Defender appointed by a majority vote of the Court of Appeals. The Federal Public Defender, her appointed full-time attorneys, and "other personnel" in such number as is approved by the Direction of the Administrative Office of the United States Courts are federal employees, and are considered employees of the judicial branch of the United States government. As such, all parties herein are such employees.

Defendants argue that the Court should dismiss the Complaint on grounds that Plaintiff has failed to state of claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). They assert that this court lacks subject matter jurisdiction to hear a *Bivens* action, as pled by the Plaintiff, and that his claims are precluded by the Civil Service Reform Act ("CSRA") 5 U.S.C. §§ 2101–2103. In response, Plaintiff states that the failure of this Court to hear his case would effectively leave him without a forum in which to litigate his grievance against his federal employer.

The Supreme Court has repeatedly warned against extending *Bivens,* which involved an egregious breach of the Fourth Amendment by federal agents, into new areas. *Robbins v. Bentsen.* 41 F.3d 1195, 1200 (7th Cir.1994)(quoting *F.D.I.C. v. Meyer* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Accordingly, the Court has held that it would be inappropriate to create a new non-statutory damages remedy for federal employees whose constitutional rights are violated by their employers, because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions, which give meaningful remedies against the United States. *Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

As argued by Defendants, the Supreme Court has found that "special factors" exist which "counsel hesitation" in creating such a non-statutory remedy for federal employees because "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary actions by supervisors and procedures-administrative and judicial-by which improper action may be redressed." *Bush,* 462 U.S. at 385–86, 103 S.Ct. 2404, In *Bush,* the Court also noted that the question is not what remedy the court should provide for a wrong that would otherwise go unredressed, but whether the elaborate, remedial system already in place should be augmented by the creation of a new judicial remedy for alleged constitutional violations. *Id.* at 388, 103 S.Ct. 2404. It refused to create such a remedy for federal employees, concluding that Congress is in a far better position than the judiciary to decide whether it would be in the public interest to create such a remedy. *Id.* at 389–90, 103 S.Ct. 2404.

■ Accordingly where, as here, a plaintiff's claims indisputably arise from a federal employment relationship, a *Bivens* remedy is inappropriate where the "special factor" of federal employment exists. The Supreme Court has recognized that the CSRA comprehensively overhauled the civil service system and created an elaborate new framework for evaluating adverse personnel actions against federal employees. *Lindahl v. OPM,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). "A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system." *United States v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Con-

gress enacted the CSRA, an integrated scheme of administrative and judicial review, which was designed to balance the interests of federal employees with the need for sound and efficient administration. *Id.* at 445, 108 S.Ct. 668. *See generally, Collins v. Bender,* 195 F.3d 1076, 1077–78 (9th Cir.1999) (noting that judicial deference is particularly appropriate in the realm of federal personnel policy because Congress is far more competent than the Judiciary to provide a proper remedy for unconstitutional personnel actions). Thus, Congress has provided an elaborate remedial scheme for the protection of a person's constitutional rights in the employment context. *Robbins,* 41 F.3d at 1202 (dismissing an IRS employee's Title VII action for employment discrimination).

■ The CSRA provides the exclusive remedy for aggrieved federal employees pursuing claims that arise out of their federal employment. Plaintiff's claims against Defendants indisputably arise out of his federal employment as he is contesting his termination from the Federal Public Defender's Office. The lack of an alternative forum in which he can litigate his grievance over his termination is immaterial as CSRA preclusion applies even in the absence of a CSRA remedy. *See generally, Lee v. Hughes,* 145 F.3d 1272 (11th Cir.1998), and *Zimbelman v. Savage,* 228 F.3d 367 (4th Cir.2000).

■ In *Blankenship v. McDonald,* 176 F.3d 1192 (9th Cir.1999), the Ninth Circuit ruled that a federal court reporter who had no effective remedies under the CSRA did not have an action for money damages for alleged constitutional violations in the workplace. The plaintiff, Kathryn Blankenship, a court reporter, sued her employers, District Court Judge Alan A. McDonald and Court Clerk James Larsen in their individual capacities, alleging that they violated her First and Fifth Amendment rights, and that these violations

caused her injuries for which she should receive money damages. The Ninth Circuit affirmed the District Court's dismissal of Blankenship's suit for failure to state a claim upon which relief can be granted. In doing so, the Court of Appeals quoted the Supreme Court in *Bivens,* which held that a plaintiff could state a claim and recover money damages against federal officials for constitutional violations only where there are no "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens,* 403 U.S. at 396–97, 91 S.Ct. 1999. "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," the Supreme Court has not created additional *Bivens* remedies. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). *Bivens* remedies are not created if there are "indications that congressional inaction has not been inadvertent." *Moore v. Glickman,* 113 F.3d 988, 993 (9th Cir.1997) (quoting *Chilicky,* 487 U.S. at 423, 108 S.Ct. 2460).

Plaintiff Hays is similarly situated to Blankenship. As an investigator with the Federal Public Defender's Office, Hays is a member of the "excepted service" under the CSRA. The CSRA contains an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations ..." *Bush,* 462 U.S. at 388, 103 S.Ct. 2404. In *Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991), the Court stated:

> The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights. In the area of federal employment, Congress is better equipped than

we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce.

Because congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees, the CSRA precludes a *Bivens* remedy for Plaintiff in this case. Congress has given judicial employees certain employment benefits and remedies, such as back pay, severance pay, family and medical leave, and health and retirement benefits. Congress has withheld other benefits and remedies, such as review of adverse personnel decisions. This demonstrates that the lack of more complete remedies was not inadvertent. *See Moore,* 113 F.3d at 992, *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motions to Dismiss.

IT IS SO ORDERED.