Joseph E. PAIGE, Plaintiff–Appellant,

v.

Henry CISNEROS, Secretary of Housing and Urban Development, and Edwin Eisenrath, Regional Administrator, Defendants–Appellees.

No. 95–2892.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1996.

Decided July 30, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 9, 1996.

Robert A. Filpi (argued) and Paul F. Stack, Stack, Stack & Filpi, Chicago, IL, for plaintiff–appellant.

Colleen B. Grzeskowiak, Department of Justice, Federal Programs Branch–Civil Division, Washington, DC, Linda A. Wawzenski, Office of the U.S. Attorney, Chocago, IL, Barbara C. Biddle, Department of Justice, Appellate Staff, Civil Division, Washington, DC, Harry Litman (argued), and Mark D. Greenberg, Department of Justice, Civil Rights Division, Washington, DC, for defendants–appellees.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Joseph Paige served as an attorney for HUD for twenty years and was fired twice. The first discharge occurred in 1977, when HUD accused Paige of inadequate performance as Area Counsel for HUD's Chicago Area Office. Because Paige occupied a Schedule A position in the excepted service, HUD believed that it could discharge him at will, and accordingly it did not offer him a hearing. Paige sued, claiming that an employee handbook established a property right in his position; if he had such a right, the discharge without opportunity for a hearing violated the due process clause of the fifth amendment. The district court dismissed his claim, but this court reversed. We held that the HUD handbook indeed established a property right in the job; HUD therefore owed Paige a hearing at which he could challenge his discharge. *Paige v. Harris*, 584 F.2d 178 (1978). Considering it a futile gesture to require an administrative hearing at that point, however, we directed the district court to determine whether Paige had been fired for cause. Before that proceeding took place, the parties settled. By consent decree dated August 14, 1979, Paige received reinstatement as an Associate Regional Counsel for HUD along with back pay. The decree also stated that "Paige shall have tenure in his employment at the Department of Housing and Urban Development and

shall not be discharged from such employment except for just cause".

The current dispute arose ten years later, when Paige received written notice of HUD's desire to oust him once again, this time for insubordination. In a detailed memorandum HUD accused Paige of numerous acts of defiance, including refusal to file litigation reports and contravention of office policy in the processing of cases. At a pre-termination hearing Paige was allowed to respond orally to the charges against him and to produce evidence on his behalf. He was unrepentant. He argued that to do as he was told would have been folly, because the reports were unnecessary and he knew a better way to process cases. Paige's defense to other charges involving mail policy, signature authorizations, and the preparation of legal opinions was in the same vein—he admitted disobedience but claimed that he knew better than his supervisors and had a right to make independent judgments. Not surprisingly, HUD was unimpressed. In its view a rule that says "obey your superiors except when you don't agree" does not promote efficient administration. It issued Paige a written notice of discharge effective March 2, 1990. After Paige left its employ, HUD refused to reconsider or offer further internal review of the decision. Paige then filed a motion under the consent decree's reservation-of-jurisdiction clause. He contends that HUD failed to comply with both the 1979 consent decree and the Constitution.

The district court agreed with Paige that the pre-termination hearing was insufficient under the due process clause and the decree, but the court declined to award reinstatement or hold a trial to determine whether Paige's discharge was for "just cause." Instead, the district judge "remanded" the matter to HUD for more hearings, remarking that federal court is not the appropriate forum for adjudicating personnel decisions of public agencies. The district court ordered HUD to appoint an impartial hearing officer to try the dispute, and to provide Paige with the right to appeal before an impartial board of review. HUD complied with this order, and Paige lost at both levels. Paige returned to the district court but lost there too, as the

court upheld HUD's findings of just cause under the substantial evidence standard.

■ Paige argues that, once the district court detected a deprivation of due process, it had no business remanding the case to HUD, a party to the dispute. He suggests that immediate reinstatement was warranted, but, if not that, at least the chance to prove at trial that just cause was lacking. According to Paige, by delegating this issue to HUD and according its decision deferential review, the court neglected its duty to decide the case before it and also gave decision-making authority to a partial entity.

We agree with Paige that the district court lacked authority to remand the case to HUD, but for a different reason: It hadn't subject matter jurisdiction. By the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified as amended in various sections of 5 U.S.C.), Congress gave exclusive jurisdiction over civil service personnel disputes to the Merit Systems Protection Board (MSPB). The district court recognized this but held that Paige did not qualify for MSPB review because of his status as a non-preference-eligible member of the excepted service. At the time Paige was discharged, only members of the competitive service or employees designated as preference eligible (mostly veterans) could appeal to the MSPB discharges of the type involved here. 5 U.S.C. § 4303(e) (1988). (Because Paige was discharged before August 17, 1990, he could not take advantage of a later amendment to § 4303(e) allowing some non-preference eligible members of the excepted service to appeal to the MSPB. 5 U.S.C. §§ 4303(e), 7511(a)(1)(C); Pub.L. 101–376, 104 Stat. 461.) Since Paige could not appeal to the MSPB, the district court thought it appropriate to order the creation of a parallel administrative apparatus through which he could challenge his termination. This action was unwarranted because it failed to accord respect to the administrative system established by statute for reviewing federal personnel actions. A statute providing for review of some claims but not others means that the "others" (like Paige's) don't receive review; it does not mean that judges should disregard the exclusions and order the agen-

cy to provide a comparable administrative review anyway.

What then happens to Paige's contentions? He thinks that because he does not qualify for MSPB review he can jump straight into district court. Unfortunately for him, however, the effect is quite the opposite. *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), holds that by creating a comprehensive review system the CSRA implicitly repealed the jurisdiction of federal district courts over personnel actions of a type appealable to the MSPB, *even* when the action is against a member of the excepted service who has no right to MSPB review. The result: Many personnel actions are unreviewable in any court or administrative tribunal. Any other interpretation of the Act, the Court held, would invert the CSRA's system of preferences for certain employees, making competitive service and preference-eligible employees worse off than others. Many plaintiffs would prefer to begin their campaigns against federal agencies in district court rather than trudge their way through administrative proceedings—many of which are controlled by the agency being sued. The CSRA accordingly forbids this jump for all classes of federal employees whether or not they are entitled to administrative review.

■ Paige points out that the district court entered a consent decree protecting his job in a case arising from a pre-CSRA dismissal. He contends that the court must retain jurisdiction to enforce this decree. That submission misses the point. The CSRA allocates jurisdiction according to the type of personnel action taken against the employee-in this case a Chapter 43 discharge—not the nature of the employee's gripe against that action. 5 U.S.C. §§ 4303(e); 7701(a), (b). That Paige's first dismissal occurred under the pre-CSRA system means that the district court had jurisdiction to review *that* action, but it does not mean that a court may assert jurisdiction over subsequent personnel actions, in contravention of the CSRA, for the employee's lifetime. Statutes curtailing the jurisdiction of federal courts generally apply to pending cases. *Landgraf v. USI Film Products,* 511

U.S. 244, ———– ———, 114 S.Ct. 1483, 1501–02, 128 L.Ed.2d 229 (1994); *Bruner v. United States,* 343 U.S. 112, 114–17, 72 S.Ct. 581, 583–85, 96 L.Ed. 786 (1952); *Insurance Co. v. Ritchie,* 72 U.S. (5 Wall.) 541, 544–45, 18 L.Ed. 540 (1866). Courts cannot retain jurisdiction where Congress has taken it away. This is not, as Paige contends, a retroactive application of new law. The CSRA was enacted even before the consent decree was entered, and it had been on the books for 12 years when Paige was fired the second time. The existence of the CSRA means that the reservation-of-jurisdiction clause in the decree must be understood to permit the district court to police the settlement of the dispute about the 1977 discharge. It cannot be read to establish, in perpetuity, a Paige-specific personnel system in defiance of the CSRA—for the Executive Branch lacks authority to consent to such a thing, and the Judicial Branch lacks authority to implement it.

■ What are Paige's rights under the decree? He has a right not to be fired "except for just cause". This does not mean "cause as established by an elaborate system of judicial review". Nothing in the decree or our opinion in *Paige v. Harris* says such a thing, and again we interpret the decree to avoid conflict with the CSRA. The consent decree simply gives Paige the same property interest in his new job at HUD that, we held, he had in his previous one. It prevents HUD from eliminating this protection by altering the employee handbook. Paige thus received a substantial boon. HUD has not attempted to strip Paige of this property interest, and it gave him a pre-termination hearing, so the principal functions of the decree have been fulfilled. We do not think that the decree itself affords him any additional rights—although at the district court's behest HUD gave Paige a post-termination hearing and an administrative appeal, two steps beyond what the decree requires. We do not think that the decree serves any other function (either substantive or jurisdictional) in this litigation.

■ What, then, of the possibility that Paige has an independent constitutional claim? To the extent that Paige wants monetary relief under *Bivens v. Six Unknown*

*Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), his claim is less secure than one grounded in an explicit Act of Congress, for the Supreme Court has urged special caution in the creation of new *Bivens* remedies, especially where Congress has established an administrative system of remedies. *FDIC v. Meyer,* 510 U.S. 471, —— ——, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994); *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). *See also Gorden v. Kreul,* 77 F.3d 152 (7th Cir.1996). "When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," it is inappropriate for courts to create "additional *Bivens* remedies." *Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2468. In *Lucas* the Court held that the administrative scheme available to federal employees prior to the enactment of the CSRA precluded *Bivens* relief for an unconstitutional discharge, even where the employee's remedies were inferior under Congress's chosen plan. 462 U.S. at 373, 103 S.Ct. at 2409. The fact that Congress has subsequently consolidated civil service law and created the MSPB to deal with such matters strengthens the conclusion that *Bivens* remedies have no place in individual personnel disputes arising out of federal employment. *Robbins v. Bentsen,* 41 F.3d 1195, 1200–03 (7th Cir.1994); *Feit v. Ward,* 886 F.2d 848 (7th Cir.1989); *Moon v. Phillips,* 854 F.2d 147 (7th Cir.1988).

Paige wants employment in addition to money. Two courts of appeals have held that this makes a difference. *Mitchum v. Hurt,* 73 F.3d 30 (3d Cir.1995); *Hubbard v. EPA,* 809 F.2d 1, 11 n. 15 (D.C.Cir.1986), vacated in part under the name *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988) (en banc). These courts reason that the CSRA does not affect the general grant of federal-question jurisdiction in 28 U.S.C. § 1331 and waiver of sovereign immunity in 5 U.S.C. § 702 for cases seeking prospective relief. Three circuits have held to the contrary that the CSRA precludes both monetary and eq- uitable relief. *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991); *Stephens v. Department of Health & Human Services,* 901 F.2d 1571, 1576 (11th Cir.1990); *Lombardi v. Small Business Administration,* 889 F.2d 959, 961–62 (10th Cir.1989). We do not think it necessary to choose between these lines of authority, because Paige lacks the sort of substantial constitutional claim that activates the rule requiring doubts to be resolved in favor of judicial review. *See Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435 (7th Cir.1996) (en banc).

■ The due process clause of the Constitution required HUD to give Paige notice and the opportunity for a hearing to contest the charges against him. He received a pre-termination hearing, at which he pleaded confession and avoidance. Paige admitted the factual charges and presented a justification that simply fortified HUD's tentative conclusion that he was not a suitable employee. His admissions before the agency ended any further need for a hearing on the truthfulness of HUD's submissions about his performance on the job. All that remained was attaching a consequence to admitted facts. Agencies no less than courts can grant summary judgment, and the due process clause does not require a hearing where there is no disputed issue of material fact to resolve. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Greene v. Finley,* 749 F.2d 467 (7th Cir.1984). Sometimes the Constitution extends an opportunity to tell one's side of the story and thereby inform the decisionmaker's discretion in assigning the appropriate penalty, even when the essential facts are uncontested. See *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543 & n. 8, 105 S.Ct. 1487, 1493–94 & n. 8, 84 L.Ed.2d 494 (1985); *Goss v. Lopez,* 419 U.S. 565, 583–84, 95 S.Ct. 729, 740–41, 42 L.Ed.2d 725 (1975). HUD gave Paige that chance and then decided to fire him. We are left scratching our heads over how this fell short of the constitutional minimum. And of course by the time the case arrived here, Paige had gone through another hearing and an administrative appeal. His constitutional claim is so feeble that he would not be enti-

tled to relief on any court's understanding of the relation between § 702 and the CSRA.

The district court had jurisdiction to determine whether Paige's discharge complied with the 1979 consent decree, as we have interpreted that document. Its judgment is affirmed to the extent it holds that the 1990 discharge does not transgress the decree. The judgment is otherwise vacated, and the case is dismissed with instructions to dismiss for want of jurisdiction under *Fausto*.