# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 05-2395

EUGENE R. RICHARDS, JR.,

*Plaintiff-Appellant,*

*v.*

KATHLEEN L. KIERNAN, MALCOLM W. BRADY,
EDGAR DOMENECH, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 4013—**Rebecca R. Pallmeyer,** *Judge.*

---

ARGUED JANUARY 5, 2006—DECIDED AUGUST 25, 2006

---

Before FLAUM, *Chief Judge*, and ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge.* Eugene Richards, a former employee of the Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF), brought suit against his supervisors alleging that they violated his First Amendment rights by retaliating against him for his whistleblowing activities. The district court concluded that Richards' sole remedy was through the Merits Systems Protection Board (MSPB) and that his appeal from that decision should have been made to the United States Court of Appeals for the Federal Circuit. We affirm.

## I.

In our review of this motion to dismiss, we accept all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in favor of Richards. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1008 (7th Cir. 2002).[1] Richards was a former supervisor in the Bureau of ATF. In 1998, ATF transferred Richards to the Chicago Field Division, which turned out to be a hotbed of personality conflicts and unpleasant office politics. At the core of the torrent were Richards' first line supervisor, Chicago Group Supervisor, Mark Rusin, and Richards' second-line supervisor, Special Agent in Charge, Kathleen L. Kiernan. As the storm swelled, agency superiors requested a review of the Chicago Field Division. Over the course of the four day investigation in June 1999, Richards backed Rusin's claim that Kiernan had acted in violation of ATF policy. He also alleges that he reported additional instances of improper conduct by Kiernan. ATF transferred Richards to Washington D.C. in August 1999, and then back to Chicago in December of that same year. In September 2000, ATF selected him for transfer to New York City.

Richards did not want to leave Chicago where his wife was employed in a "highly compensated" position with the Department of Housing and Urban Development. (R. at 1,

---

[1] Richards made this task more difficult by ignoring Fed. R. App. P. 28(a)(7) which states that "[n]o fact shall be stated in the statement of facts unless it is supported by a reference to the page or pages of the record or the appendix where that fact appears." *See also* Fed. R. App. P. 28(e); 7th Cir. R. 28(c). Nevertheless, because the sole question for review is whether the remedial scheme of the Civil Service Reform Act precluded Richards from bringing a claim in the district court, a detailed exposition of the underlying facts is largely unnecessary.

p.4). ATF, however, denied his request for a hardship reprieve, and his requests to transfer to Washington D.C. were thwarted, he alleges, by Malcolm Brady, the Deputy Assistant Director of the Chicago Field Office, and another supervisor, Larry Ford. Rather than transfer to New York City, Richards tendered his resignation to his New York supervisor, Edgar Domenech, on May 21, 2001, claiming that he was resigning due to a "hostile work environment." And then his legal claims began.

Richards first filed a formal complaint of discrimination with the ATF. The Department of Treasury (the former parent of the ATF) issued a Final Agency Decision finding no discrimination or retaliation. Richards then turned to the Office of Special Counsel alleging that his supervisors had retaliated against him in response to his whistleblowing activities. That claim and the appeal also failed. For his third attempt, Richards filed a complaint in the district court below alleging constructive discharge and retaliation for exercise of his First Amendment rights. (R. at 1). Richards sued five of his former supervisors, Kiernan, Brady, Domenech, Ford, and David Benton in their personal capacities. He also sued John Ashcroft and Carl J. Truscott in their representative capacities as heads of the Department of Justice and ATF, respectively, and the agencies themselves. When the parties disagreed as to his exhaustion requirements, however, Richards moved to voluntarily dismiss his complaint with leave to reinstate so that he could pursue his claims in his fourth venue, the MSPB, the administrative agency charged with adjudicating federal employee personnel appeals. The MSPB held that it lacked jurisdiction over Richards' discharge claim, concluding that he had voluntarily retired, and denied the whistleblower claim finding that Richards had not made any protected disclosures. (R. at 10, Ex. 1, pp. 8, 11, 14). Even if Richards had made a disclosure, the MSPB concluded, the Whistleblower Protection Act (WPA) protected only disclosures of

information of which the agency was previously unaware. (R. at 10, Ex. 1, p. 8-9) (citing *Meuwissen v. Dep't of Interior*, 234 F.3d 9, 12-13 (Fed. Cir. 2000)). Rather than appealing the MSPB's decision to the Court of Appeals for the Federal Circuit, the only court with power to review the decision (5 U.S.C. § 7703(b)(1)), Richards reinstated his First Amendment claim in the district court below. The district court granted the defendants' motion to dismiss on the grounds that the court lacked jurisdiction over Richards' claims. The district court noted that Richards' appeal from the MSPB's decision had to be made to the Federal Circuit and not to the Northern District of Illinois. (R. at 18). We review the district court's decision granting a motion to dismiss de novo. *Boim*, 291 F.3d at 1008.

## II.

Richards maintains that the defendants violated his First Amendment rights by retaliating against him for blowing the whistle on allegedly improper conduct by an ATF supervisor. The Supreme Court case of *Bivens* authorizes the filing of constitutional suits against individual federal officers. *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Not all constitutional claims may be brought before the federal courts, however. In some cases, Congress has established comprehensive administrative bodies with broad remedial powers to resolve all contested matters before them. The Supreme Court has determined that, in light of the comprehensive nature of some of these remedial schemes, it would be inappropriate to allow judicial remedies as well. *See Bush v. Lucas*, 462 U.S. 367, 368 (1983). The Civil Service Reform Act (5 U.S.C. § 1101 et seq.) (CSRA) is one such scheme which provides a "comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena*, 60 F.3d 346, 347 (7th

Cir. 1995). By creating the CSRA, Congress implicitly repealed the jurisdiction of federal district courts over personnel actions arising out of federal employment. *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996).

Richards would like us to carve out an exception to this rule so that he may proceed on his *Bivens* claim in this court. The Supreme Court urges caution in extending *Bivens* remedies into new contexts. *Corr. Serv. Corp. v. Malesko,* 534 U.S. 61, 70 (2001) ("In 30 years of *Bivens* jurisprudence we have extended its holding only twice."); *F.D.I.C. v. Meyer,* 510 U.S. 471, 484 (1994); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); *Paige*, 91 F.3d at 44. Federal courts will do so only when Congress has not provided an adequate remedial mechanism for a constitutional violation, and the omission of that particular remedy was inadvertent. *Schweiker*, 487 U.S. at 423; *Bagola v. Kindt*, 131 F.3d 632, 640 (7th Cir. 1997). "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker*, 487 U.S. at 423. This is true even if the existing remedies do not provide complete relief for the parties. *Bush*, 467 U.S. at 388; *Robbins v. Bentsen*, 41 F.3d 1195, 1201 (7th Cir. 1994) ("Courts may not provide constitutional remedies to supplement a congressionally-established administrative system even where that system's remedies are not as complete as the constitutional remedy might be."). For example, if an administrative remedy provides only back pay and reinstatement but a First Amendment claim brought in federal court could provide individual damages, the Supreme Court has held that Congress nevertheless created a system that provides for meaningful remedies for employees who have been disciplined for making critical comments. *Bush*, 467 U.S. at 372 & n.8, 390. Congress, the *Bush* court

determined, was in a better position to determine what remedies should be provided to civil service employees. *Id.* at 389. In short, even if the remedies provided by the CSRA are incomplete, the Act provides an adequate remedial scheme and therefore precludes a *Bivens* claim. *See Bagola*, 131 F.3d at 642; *Paige*, 91 F.3d at 44; *Robbins*, 41 F.3d at 1201. Consequently, a court need not look into the meaningfulness of an individual federal employee's remedy within the CSRA. *Feit v. Ward*, 886 F.2d 848, 854 (7th Cir. 1989). Once it has been determined that the administrative system provides a comprehensive system of protecting a plaintiff's rights, that Congress has the expertise and authority to fashion a system to protect those rights, and that the omission of a particular remedy was not inadvertent, a court may conclude that a *Bivens* action is precluded. *Id.* at 855.

Richards argues that he was denied a meaningful remedy because the MSPB and the Federal Circuit which reviews its decisions, continue to protect only the initial whistle-blowing disclosure despite legislative history indicating that Congress intended that the Act would not be limited to protecting only an "employee [who] is the first to raise the issue." S. Rep. No. 103-358, at 10. In essence, Richards argues that both the MSPB and the Federal Circuit have misinterpreted the WPA, and as proof of their error he points to the Senate Committee Report. Of course the legislative history expressing the intent of the WPA does not carry the force of law. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2626 (2005); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ("when the legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer."). More importantly, however, Richards has mislabeled his injury. Richards, was not denied a meaningful remedy. He simply lost his case and

believes the MSPB's decision was wrong. It is true that the MSPB denied him a remedy in a very literal sense—as any litigant who loses a case is denied a remedy. But this is not, of course, the same as being denied the opportunity for meaningful remedy through an administrative process as described in the *Bivens* preclusion case law. As we described above, meaningful remedies are those that provide a comprehensive system of protecting all employee's rights, even if the remedies are incomplete. *Schweiker*, 487 U.S. at 425 ("[t]he creation of a Bivens remedy would obviously offer the prospect of relief for injuries that must now go unredressed. Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were.").

Even if the MSPB and the Federal Circuit were incorrectly interpreting and applying the WPA, this would not be cause for creation of a new *Bivens* remedy. When a tribunal is simply wrong in its interpretation of the law or facts, the remedy is to seek rehearing, *Vidimos, Inc. v. Wysong Laser Co., Inc.*, 179 F.3d 1063, 1065 (7th Cir. 1999), or appeal to a higher authority. *Maness v. Meyers,* 419 U.S. 449, 458-59 (1975) ("Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice.") Richards had every opportunity to convince the MSPB that a second disclosure should be covered under the statute. (In fact, the Board has indeed found secondary disclosures to be protected in some instances. (R. at 10, Ex. 1, p. 10) (citing *Askew v. Dep't of Army*, 88 M.S.P.R. 674, 682 (2001))). On appeal he would have the same opportunity to convince the Federal Circuit to protect secondary disclosures. If the Federal Circuit failed to alter its view and Richards continued to believe that the  Circuit's interpretation of the act was incorrect, his remedy would be to appeal the Federal Circuit's decision to the Supreme Court. A litigant cannot avoid the inevitable

unfavorable decision from a U.S. Court of Appeals simply by filing a new complaint in a district court in another circuit. Richards' counsel admits that he opted not to appeal the MSPB decision to the Federal Circuit because he was fairly certain that the Federal Circuit would rule against him. (oral argument at 1min:28-35 sec and 4min:12-50 sec). It would indeed be ironic to allow a litigant to claim "futility" merely because her legal position was so weak that she was certain to lose her case.

There is no question but that the CSRA provides the exclusive remedy for an alleged constitutional violation (including an alleged First Amendment violation) arising out of federal employment. *Bush*, 462 U.S. at 368; *Paige*, 91 F.3d at 42-43; *Ayrault*, 60 F.3d at 350; *Robbins*, 41 F.3d at 1200 (First Amendment claim), *Feit*, 886 F.2d at 855 (First Amendment claim); *Moon v. Phillips*, 854 F.2d 147, 152 (7th Cir. 1988). Other circuits have specifically concluded that the CSRA provides the exclusive remedy for claims brought pursuant to the WPA. *See, e.g.*, *Stella v. Mineta,* 284 F.3d 135, 142 (D.C. Cir. 2002) ("[u]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."). *See also Hendrix v. Snow*, No. 05-11583, 2006 WL 288099 at *8 (11th Cir. Feb. 8, 2006);[2] *Harris v. Evans*, 66 Fed. Appx. 465, 467 (4th Cir. 2003); *Grisham v. U.S.*, 103 F.3d 24, 27 (5th Cir. 1997); *Desmond v. Dep't of Defense*, No. 92-2201, 1993 WL 88196 at *2-3 (1st

---

[2] Citation to these unpublished opinions is permitted in the rendering court when used, as they are here, as persuasive authority. *See* 11th Cir. R. 36-2, 4th Cir. R. 36(c); 1st Cir. R. 36(c) & 32.3(a)(2). And because citation is permitted in these circuits, they may be cited here. 7th Cir. R. 53(e) ("[e]xcept to the purposes set forth in Circuit Rule 53(b)(2)(iv), no unpublished opinion or order of any court may be cited in the Seventh Circuit if citation is prohibited in the rendering court.").

Cir. Mar. 19 1993); *Gergick v. Austin,* 997 F.2d 1237, 1239 (8th Cir. 1993)*, Rivera v. U.S.,* 924 F.2d 948, 952 (9th Cir. 1991). There is nothing about Richards' claim that would distinguish it from the scores of cases which have held that these claims must be brought before the MSPB. Furthermore, as the district court correctly concluded, any judicial review of a final decision by the MSPB lies with the United States Court of Appeals for the Federal Circuit, and not with the district courts or this court. *See* 5 U.S.C. § 7703(b)(1); *U.S. v. Fausto*, 484 U.S. 439, 446 (1988); *Ayrault*, 60 F.3d at 348.

There remains but one small housekeeping matter to address. The district court's order states as follows: "Defendant's [sic] motion to dismiss or in the alternative for summary judgment (10) is granted. This complaint is dismissed for lack of jurisdiction." (R. at 18). We have concluded before, however, that the appropriate basis for dismissing a *Bivens* claim that should have been precluded by the comprehensive scheme of the MSPB is failure to state a claim upon which relief can be granted, not lack of subject matter jurisdiction. *Massey v. Helman*, 196 F.3d 727, 738 (7th Cir. 2000) The federal courts, of course, have jurisdiction to decide all cases "arising under the Constitution." 28 U.S.C. § 1331. The Supreme Court, however, has determined that it is inappropriate for the federal courts to supplement the comprehensive procedural and substantive remedies provided to federal employees under the CSRA. *Bush*, 462 U.S. at 368. Consequently, "the rule precluding constitutional claims by federal employees who have adequate administrative remedies stems from the absence of substantive legal rights rather than the courts' lack of subject matter jurisdiction." *Massey*, 196 F.3d at 738. Because the defendants did indeed move the court to dismiss under Federal Rule of Civil Procedure 12(b)(6) we might conclude that the district court's characterization was merely a scrivener's error. Even if it were not, we have

previously held that if remanding a case dismissed for want of subject matter jurisdiction would be futile because the party has also failed to state a claim upon which relief can be granted, this court can affirm the district court, even though the dismissal for lack of subject matter jurisdiction was in error. *Id.*

The decision of the district court granting the motion to dismiss is AFFIRMED.

A true Copy:

> Teste:

> _____
> *Clerk of the United States Court of*
> *Appeals for the Seventh Circuit*