┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 29, 2020[*]
Decided February 24, 2021

**Before**[†]

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2662

| | |
|---|---|
| JAMESETTA McFARLAND-LAWSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-CV-685 |
| MATT AMMON, Acting Secretary of the Department of Housing and Urban Development, *Defendant-Appellee*. | David E. Jones, *Magistrate Judge*. |

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

[†] The Honorable Amy Coney Barrett, Associate Justice of the Supreme Court of the United States, was a judge of this court and member of the panel when this case was submitted but did not participate in the decision and judgment. The appeal is resolved by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

**O R D E R**

Jamesetta McFarland-Lawson appeals the dismissal of her suit against her former employer, the United States Department of Housing and Urban Development (HUD), alleging employment discrimination based on her disability, race, gender, and veteran status. Because the district court erred in dismissing for lack of jurisdiction and in resolving a factual dispute at the motion to dismiss stage, we affirm in part, vacate in part, and remand for further consideration.

This appeal involves a complicated history of several administrative proceedings alleging employment discrimination against HUD. To assist in untangling this history, we note at the outset that federal employees must follow certain administrative procedures when pursuing employment discrimination claims before they can sue in federal court. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 8332 (1976); *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003). Under the Civil Service Reform Act of 1978, if the employee works for an agency covered by a collective bargaining agreement that permits the filing of grievances alleging discrimination, she may begin the administrative process by filing either a union grievance or an Equal Employment Opportunity Commission (EEOC) charge, but not both. 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a).

McFarland-Lawson filed her first EEOC charge in March 2012 after HUD, where she was employed from 2002 to 2014, partially denied her request for numerous workplace accommodations for her disabilities. McFarland-Lawson asserted that HUD discriminated against her during the accommodation-negotiation process based on her race and disability and created a hostile work environment in retaliation for her request. More than four years later, in May 2016, an EEOC administrative judge decided partially in McFarland-Lawson's favor and partially in HUD's favor, concluding that HUD engaged in harassment based on disability, created a hostile work environment, and should have granted additional accommodations. The EEOC's final order imposed certain remedial measures for the workplace and awarded McFarland-Lawson $50,000 in compensatory damages, in addition to other remedies.

During the four years that McFarland-Lawson's first EEOC charge was pending, a host of other issues arose. In August 2012, during the investigation into her first EEOC charge, McFarland-Lawson made statements to an EEOC investigator that the investigator construed as a threat to her coworkers. The investigator reported the comments to HUD, and HUD placed McFarland-Lawson on paid administrative leave

until it could determine if she presented a threat to herself or her coworkers. HUD moved McFarland-Lawson to unpaid indefinite enforced leave in December 2012 because of her ongoing refusal to sign a medical-record release form or, alternatively, agree to an independent mental health evaluation, to determine whether she could safely return to work.

On February 4, 2013, a union grievance challenging management's decision to place McFarland-Lawson on unpaid indefinite enforced leave was filed. McFarland-Lawson had not signed it. The March 2013 final agency decision (which HUD supplied when moving to dismiss this case) stated, in denying the grievance, that McFarland-Lawson was present at a meeting in late February to discuss resolution of the grievance, along with the union president, HUD's regional director, and an employee-relations specialist. But McFarland-Lawson, who had not mentioned a grievance in her complaint, asserted in her response and sur-reply to HUD's motion that she did not ask the union to file a grievance on her behalf nor attend a meeting to discuss resolution of the grievance. Either way, the union did not pursue arbitration, the final step in the administrative process.

McFarland-Lawson remained on unpaid indefinite enforced leave and, in May 2013, she agreed to an independent mental health examination. After the examination she was approved to return to work on June 12, 2013, but she did not come in on that date because she was in the custody of the Milwaukee County Sheriff. She appeared for work on June 17, but two days later, HUD again placed her on paid leave because of safety concerns related to the details of her arrest the week before.

The next month, July 2013, McFarland-Lawson filed her second EEOC charge, alleging that HUD subjected her to discrimination based on disability, race, and sex, and reprisal when: (1) she was told in April 2013 that she must authorize an independent medical examination or medical record release, thus delaying a determination on whether she could return to work; and (2) HUD informed her in June 2013 that she was again being placed on leave.

In January 2014, while both EEOC charges were still pending, HUD issued McFarland-Lawson a proposal to remove her from her job, charging her with conduct unbecoming a federal employee, lack of candor, and disruptive conduct. In April 2014, HUD found all three charges substantiated and removed McFarland-Lawson from federal employment. She appealed to the Merit Systems Protection Board (the "removal appeal"). Nearly a year later, she added two claims to her second EEOC charge (which

had been pending for over a year): that HUD discriminated against her by: (1) initiating an unrequested 2012 investigation into a hostile work environment, based on a confidential conversation that was disclosed to her supervisor; and (2) disclosing her confidential medical records to a judge without her permission at an unemployment benefits hearing in September 2014.

Several months later, in April 2015, McFarland-Lawson then amended the removal appeal, adding her complaint about the disclosure of her medical records at an unemployment hearing. In September 2015, McFarland-Lawson and HUD settled the removal appeal. In exchange for $35,000, she agreed, in part, to waive her right to litigate, in any forum, any claims arising from the removal appeal or any matter that "could have been raised" therein. But the settlement also stated that she did not release or waive the claims in her two EEOC charges.

Finally, in March 2016, HUD issued a final agency decision on McFarland-Lawson's second EEOC charge finding no discrimination or harassment. She appealed but terminated her appeal to the EEOC by filing the instant case in June 2016. *See* 29 C.F.R. § 1614.409. McFarland-Lawson's operative complaint raised claims under the Americans with Disabilities Act, Title VII of the Civil Rights Act, and Section 503 of the Rehabilitation Act, and broadly alleged that the adverse employment actions taken against her since 2011 were because of discrimination based on her disability, race, gender, and veteran status. She also raised several state-law claims.

HUD moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or Rule 12(b)(6) for failure to state a claim. It argued that McFarland-Lawson could pursue only the claims raised in her second EEOC charge but that those had either been previously grieved, fully adjudicated in her first EEOC charge, or settled in her removal appeal; otherwise, they had not been administratively exhausted. McFarland-Lawson responded that HUD improperly sought to argue factual issues in its motion to dismiss; she contended that the removal appeal did not preclude any claims because the settlement explicitly preserved her right to pursue her second EEOC charge and that she did not initiate the union grievance nor participate in the meeting between the union and management.

At a hearing on March 20, 2019, the magistrate judge, presiding with the parties' consent under 28 U.S.C. § 636(c), orally granted HUD's motion to dismiss. He first concluded, with McFarland-Lawson's assent, that any claims brought in the first EEOC charge were not properly before the court. He then determined that any claim relating

to McFarland-Lawson's unpaid indefinite enforced leave was foreclosed by the union grievance, which was not fully exhausted (because there was no arbitration after it was denied). The remainder of McFarland-Lawson's allegations, the magistrate judge concluded, were either not part of her second EEOC charge or were resolved in the removal appeal. Having dismissed the federal claims, he declined to exercise supplemental jurisdiction over the state-law claims. The magistrate judge concluded by promising a written order and judgment "by the end of the week."

More than a month later, no written order or judgment under Federal Rule of Civil Procedure 58 had issued, so McFarland-Lawson filed a preemptive motion to alter or amend the judgment under Rule 59(e). She cited new evidence—namely, an affidavit from the union president stating that McFarland-Lawson never filed a union grievance. HUD responded, in part contending that the new evidence was perjured by attempting to establish with its own affidavit that the agency decision denying the grievance— which memorialized that McFarland-Lawson participated in a meeting—was genuine. HUD also included an affidavit from its regional manager attesting that he had overseen the meeting to discuss the grievance and McFarland-Lawson attended it.

On July 17, 2019, without acknowledging the pending Rule 59(e) motion or HUD's response, and without addressing the factual dispute over the meeting, the magistrate judge entered a written order and judgment finalizing its oral ruling. The order briefly summarized the hearing and granted HUD's motion to dismiss for lack of jurisdiction "for the reasons stated in the defendant's brief and on the record." McFarland-Lawson timely appealed the judgment. *See* FED. R. APP. P. 4(a)(1)(B)(iii). Although the magistrate judge did not acknowledge the Rule 59(e) motion, our jurisdiction is secure because the court's final judgment is an implicit denial of the motion. *See Dunn v. Truck World, Inc.*, 929 F.2d 311, 313 (7th Cir. 1991).

We now turn to this appeal. McFarland-Lawson primarily argues that the district court erred in concluding that she had filed, but not exhausted, a union grievance about claims in her federal complaint, and thus also erred in concluding it lacked jurisdiction over the claims in the grievance. She again asserts that the union filed a grievance without her knowledge or her approval and that she did not participate in any meeting to resolve it. Further, McFarland-Lawson points out that HUD has never produced a signed grievance form submitted by her, as required for an employee to elect the grievance process on their own behalf under the terms of the collective bargaining agreement. Instead, the record contains only a written grievance submitted by the union and the final agency decision.

This argument first requires us to consider whether failure to properly follow the administrative procedures required of federal employees, including exhaustion, is a jurisdictional defect. We conclude that it is not. The proper basis for dismissing a federal employee's employment discrimination claim that has not been properly exhausted is for failure to state a claim upon which relief can be granted, not lack of subject-matter jurisdiction. *See Richards v. Kiernan*, 461 F.3d 880, 886 (7th Cir. 2006) (federal employee's *Bivens* claim should be dismissed under 12(b)(6), not 12(b)(1), because the claim was precluded by comprehensive structure of the Civil Service Reform Act); *Hill*, 352 F.3d at 1145 ("failure to exhaust is not a jurisdictional defect"); *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) (Title VII administrative charge-filing requirement is a mandatory, but non-jurisdictional, prerequisite to suit).

We might affirm the dismissal as one for failure to state a claim, *see Massey v. Helman*, 196 F.3d 727, 738 (7th Cir. 1999), but that approach presents another problem: the magistrate judge went far beyond the pleadings in finding dismissal appropriate. Specifically, he concluded that McFarland-Lawson first challenged the delays in her return from unpaid indefinite enforced leave with a union grievance, foreclosing her ability to pursue related claims in her second EEOC charge, and to pursue that claim in the district court, because the union never exhausted the administrative process. But McFarland-Lawson did not mention the grievance in her pleadings. HUD raised the issue in its motion to dismiss, attaching the grievance and final agency decision. Agency determinations are subject to judicial notice, *see Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000), and thus may be considered on a 12(b)(6) motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). But here, McFarland-Lawson stated that she did not know of or participate in the grievance process in her responsive briefs, thus contesting the conclusion HUD urged the court to draw from the records.

This factual dispute has legal significance. The union had an independent right to file a grievance on McFarland-Lawson's behalf and could do so without her request or approval. 5 U.S.C. § 7121(b)(1)(C)(i). Contrary to HUD's position, the mere fact that *someone* initiated a union grievance does not automatically equate to an "election" of the grievance procedure by McFarland-Lawson. *See Kendrick v. Dep't of Veterans Affairs*, 74 M.S.P.B. 178, 181 (1997). If the union filed a grievance automatically over the unpaid enforced leave, or otherwise without McFarland-Lawson's assent, she could still independently pursue an EEOC charge on the same issues unless she became aware of the grievance and ratified it by failing to disavow it when given the opportunity. *See id.* at 182–83; *Morales v. Merit Sys. Prot. Bd.*, 823 F.2d 536, 538–39 (Fed. Cir. 1987).

Rather than addressing this factual dispute, the magistrate judge accepted HUD's assertion that pursuit of the union grievance, regardless of McFarland-Lawson's knowledge or involvement, meant she had elected that as her remedy. This conclusion failed to construe the briefs and complaint in the non-movant's favor and decided a factual dispute that should not have been resolved on a motion to dismiss. *See Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chi.*, 45 F.3d 1144, 1154 (7th Cir. 1995).

Thus, to dismiss this portion of McFarland-Lawson's complaint, the magistrate judge was required to treat the motion to dismiss as one for summary judgment. *See* FED. R. CIV. P. 12(d). But even if the magistrate judge intended to so construe the motion, that would have been error because he did not give notice to the parties and did not give McFarland-Lawson an opportunity to present evidence or her own affidavit in support of her position. *See id.*; *Air Line Pilots Ass'n, Int'l*, 45 F.3d at 1154 n.6.

Because the district court erred by treating failure to exhaust as a jurisdictional issue and in resolving a factual dispute about whether McFarland-Lawson filed (but did not exhaust) a grievance over delays in her ability to return from unpaid indefinite enforced leave, we VACATE that portion of the dismissal and REMAND for further proceedings. For the sake of clarity moving forward, the claim we remand is the second claim listed on the first page of the March 10, 2016, final agency decision denying McFarland-Lawson's second EEOC charge (alleging discrimination when "On April 4, 2013, she learned that she needed to authorize an extension of an independent medical examination and review of her medical files, thus delaying a determination of when she would be allowed to return to work."). Because McFarland-Lawson abandons all other claims on appeal, *see Jones v. Union Pacific R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002), and no other portion of the magistrate judge's decision involved improper resolution of a factual dispute, we otherwise AFFIRM the dismissal of the complaint.